# CHARLESTON.

THE HUNTINGTON FINANCE COMPANY *v.* U. G. YOUNG

(No. 6156)

Submitted April 10, 1928.    Decided April 17, 1928.

1. BILLS AND NOTES—EVIDENCE—*Agent Signing Note With "Trustee" Following Name Held Not Personally Liable on Showing Payee Knew of Representative Capacity; Statute Relieving One Signing Negotiable Instrument in Representative Capacity From Liability Thereon Held Not to Change Common-Law Rule; at Common Law as Between Original Parties to Negotiable Instrument and Those With Notice, Consideration and Conditions Under Which Note Was Delivered May be Shown (Code, c. 98a, § 20; c. 99, § 10).*

Where one as the agent of another signs a negotiable note, with the appellation "trustee" following his name, without disclosing on the face of said note the principal for whom he signed, he is not personally liable to the payee under the negotiable instruments law (Code, Chapter 98-A, Section 20) if he shows that the payee knew that he was acting, and executed the instrument, in a representative capacity. The statute does not change the common law rule, which is to the effect that, as between the original parties and those having notice of the facts relied on as constituting a defense, the consideration and conditions under which a note was de-delivered may be shown. (p. 409.)

(Bills and Notes, 8 C. J. §§ 266, 269; Evidence, 22 C. J. §§ 1542, 1559.)

105 W. Va.

2.  SAME—*Holder May Maintain Assumpsit on Note Signed by Agent Against Principal Without Joining Agent; Holder of Note May Show by Parol Evidence Debt Evidenced Thereby Was That of Principal of Party Signing as Agent and That it Was So Understood Between Agent and Other Contracting Party (Code, c. 98a, §§ 18, 20).*

A holder of the note in such case, having notice of the facts relied on as constituting such defense, may maintain an action in assumpsit against the principal without joining the agent, and may introduce parol evidence to show that the debt evidenced by said note was in fact that of the principal, and that it was so understood between the agent and the other contracting party. (p. 409.)

(Bills and Notes, 8 C. J. § 1109 ; Evidence, 22 C. J. § 1656.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Assumpsit by the Huntington Finance Company against U. G. Young. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Scott, Graham & Wiswell,* for plaintiff in error.
*J. H. Strickling,* for defendant in error.

WOODS, JUDGE:

This is an action in assumpsit instituted in the circuit court of Cabell county by the Huntington Finance Company against U. G. Young to recover the balance of four notes given by F. B. Livezey, trustee, to C. B. Turner, and assigned by the latter to plaintiff company, of which Turner was an officer. The jury found for the plaintiff, and judgment was entered thereon. Defendant brings error to this Court.

The evidence shows that on June 15, 1925, C. B. Turner and wife executed a deed to B. F. Livezey, trustee, for three certain properties in the city of Huntington, for and in consideration of $45,270.40, "evidenced by four notes of even date therewith and secured by a deed of trust on the properties herein described", and an agreement to assume the payment of the balance of the several principals, plus accrued

interest, on loans obtained on each of said properties from a certain Richmond banking institution, secured by former deeds of trust on each of said properties. Livezey, who is the son-in-law of Young, executed the notes, the first two of which were in the sum of $5,000.00 each, and the remaining two, in the sum of $6,585.20 each. Each was made payable to C. B. Turner, and was signed "B. F. Livezey, trustee". The deed of trust, provided for in the deed, was also executed by the latter to T. J. Sayre, trustee, to secure payment of the notes. The deed to Livezey, trustee, was delivered to Young; but the same was never recorded. The four notes were negotiated with the plaintiff company. Upon default in the payment of the first of this series of notes to fall due, Parsons, one of the officers of the plaintiff company, appeared at the office of Young to collect the same. The evidence is in conflict as to what actually transpired at this meeting, as will appear later, except that the deed was turned over to Parsons. The Huntington Finance Company directed Sayre, trustee, to sell the property, at which sale the Huntington Finance Company, subject to the equity of the said Richmond banking institution, became the purchaser. The proceeds of this sale was applied on the four notes, leaving a balance of approximately $11,000.00 unpaid, including principal and interest. Some time later Young purchased from plaintiff company one of the properties included in the foregoing transaction, and then sold the same to one Jarrett. After the purchase, Jarrett had an abstract made. This showed a trust deed from Livezey, trustee, to Sayre, trustee, a sale and a deed from Sayre, trustee, et cetera, but did not show the transfer from Turner to B. F. Livezey, trustee. In order to supply this link in Jarrett's chain of title, Young, Livezey and Turner each made an affidavit to the effect that the property had been transferred to Livezey, trustee, for the use of Young, and that the said Livezey, trustee, had authority to execute the deed of trust to T. J. Sayre, trustee, for the said Young. A second deed was executed by Turner, the same setting the former deed out in *haec verba*, and Young and wife and Livezey also made a deed on the same date conveying to U. G. Young Company, a corporation, the property, in order to

complete the chain of title. This suit was subsequently brought to recover the remainder due on the notes given by Livezey, trustee.

Plaintiff bases his action on the theory that Livezey, in executing the notes in his own name, as "trustee", was acting for and in behalf of Young, and that Young was in reality the real maker thereof and primarily liable. The court permitted Young to file, in addition to the plea of the general issue, two special pleas in defense. The first sets up that Turner, as an officer of the plaintiff company, had title to certain real estate, which he held for the use and benefit of the plaintiff company; that he (Young) entered into an agreement with the plaintiff company through Turner and Parsons, its agents, that he would purchase said property and have legal title thereto conveyed to Livezey, trustee, to be held until defendant could find sale for same, and that he would not be liable for the purchase price unless sale could be had, and that pursuant to said agreement the property was so conveyed by Turner and wife; that if Livezey, trustee, executed and delivered any notes, the execution of said notes were unauthorized, and his act without authority and void; that the actions of Livezey, trustee, the subsequent sale by Sayre, trustee, etc., were unknown to defendant; that he later bought one of the properties, and at that time it was agreed that all claims or demands which the said plaintiff company had against defendant on account of said former deal would be settled and cancelled, and that the plaintiff and Turner contracted with Livezey, trustee, to return the several notes, executed by him as trustee. In his second plea he also states that he did not sign any of said notes, and that he never gave Livezey the right to sign any notes as trustee or agent.

The plaintiff objected to so much of the plea as set up the defense that the property was conveyed to B. F. Livezey, trustee, to be held until Young could find a sale for said property, and that Young would not be liable to the purchase price of said property, unless sale could be had. The court overruled this exception and permitted evidence to go to the jury on this phase of the case. Counsel for plaintiff argues that such parol evidence to establish such defense was inad-

missible on the ground that when a deed is made and delivered complete on its face, parol evidence is inadmissible to show a contemporaneous or antecedent parol understanding or agreement varying or contradicting the plain letter of the deed, citing in support thereof *Crislip* v. *Cain,* 19 W. Va. 438; *Knowlton* v. *Campbell,* 48 W. Va. 294; *Mahaffey* v. *Lumber Company,* 61 W. Va. 571, and numerous other cases. This is the law where the deed is delivered to the grantee. However, here, Young is denying the fact that he was the grantee therein, or that Livezey was his trustee, for the purpose of receiving a title for which he was to be benefited. Young's name does not appear in the deed. He could only be bound in the event it was established by oral testimony that Livezey was his agent. The defense, therefore, sought to be set up in this plea, tends to disprove this agency. The testimony admitted under it was proper for this purpose.

The defense is centered on the lack of right of the plaintiff to maintain the action under the special counts of the declaration in assumpsit and the alleged improper admission in evidence upon the trial of the several notes, the deed, and deed of trust, executed by Livezey, trustee, and certain affidavits. The declaration declares on the theory that while the notes declared on were those of Livezey, trustee, they were in fact the obligations of Young, and made at his solicitation and request—that Livezey was merely his agent for the purpose and not liable. It necessarily follows therefore that if the admitted evidence complained of was proper, the declaration was sufficient, and vice versa. Hence, no separate consideration of the questions thus raised is required.

The plaintiff, on the question of the right to maintain the action, cites section 10, Chapter 99 of the Code: "An action of debt or assumpsit may be maintained on any note or writing, whether sealed or not, by which there is a promise, undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby, or his agent." The defendant contends that this section, being taken from the Virginia Code, at the formation of this State, is in conflict with sections 18 and 20, Chapter 98-A, Code: "No person is liable on the instrument whose signature does not appear

thereon except as herein otherwise expressly provided * * *.''
And, ''Where the instrument contains, or a person adds to
his signature, words indicating that he signs for or on behalf
of the principal or in a representative capacity, he is not
liable on the instrument if he was duly authorized; but the
mere addition of words describing him as an agent or as filling
a representative character without disclosing his principal,
does not exempt him from personal liability.'' The decisions
interpreting these sections of the Negotiable Instrument Law
are not in harmony, some courts holding that, although the
signature of the person on a note is followed by a word in-
dicating representative capacity, yet, no obligated principal
being disclosed, he cannot escape personal liability under this
law. *Daniel* v. *Glidden,* 38 Wash. 556; *Dayries* v. *Lindsly,*
128 La. 259. Subsequent to our adoption of such law, this
Court in *Clark, Trustee* v. *Talbott,* 72 W. Va. 46, dealt with
a case similar in aspect to the one under consideration here.
However, the note in question there was executed, and fell
due and payable, before the enactment of such law. The
maker there signed a negotiable note with the suffix ''Agt.''
to his signature. The trial court allowed the defendant to
introduce witnesses and prove by them that the defendant
was, at the time of the execution of the note sued on, the
agent of another; that while the note did not disclose the
principal, that the bank which discounted the note sued on
knew at the time that he was the agent of another. This
Court, after an exhaustive consideration of the authorities,
stated that the more modern cases hold that it is competent
for the agent to show that what appears to be the agent's
obligation is in fact the principal's, citing with approval 31
Cyc. 1660 to the effect that where the paper bears on its
face some reference to a principal, *or some appellation indi-
cating representative capacity,* thereby suggesting doubt as
to the character in which the defendant acted, parol evidence
is admissible to show that the contract was in fact that of
defendant's principal and that it was so understood between
the defendant and the other contracting party. In a later
case, that of *Bank* v. *Jacobs,* 85 W. Va. 653, which involved
an interpretation of the section of the Negotiable Instrument

Law under consideration, it was held that where the instrument contained words indicating representative capacity, or person adds to his signature words having such import, he is not personally liable if duly authorized to execute it. Again, in *Bank* v. *Parsons,* 90 W. Va. 51, the rule is stated to be that where a note executed for a principal, by an agent, need not show on its face that it was executed by such agent, and the authority of the agent may be established as in other cases of agency. These were cases involving negotiable paper. In the case under consideration it is contended that the payee took the notes with the understanding that Livezey did not intend to bind himself personally, but was acting on behalf of Young. The case was tried on this theory and the jury were instructed at the instance of the defendant that notice to Turner, by virtue of his connection with the transaction as representative officer of the plaintiff corporation, was notice to the corporation, and that such corporation took the notes, with such notice as Turner had regarding the capacity in which Livezey acted. So, whatever may be their status as to Livezey, trustee, as to negotiability, the plaintiff corporation may be considered as charged with notice of the true capacity in which Livezey acted, and for whom.

The courts of other jurisdictions have dealt with this statute. The Supreme Court of Kentucky holds that one who signed a note as trustee without disclosing his principal may set up as against one not a holder in due course any defense allowable under this act. *Riordon* v. *Thornsbury,* 178 Ky. 324. Parol evidence is admissible to show that a person signed a note as agent of another where it is doubtful from the face of the note whether he was bound personally or acted as agent for a third party. *Myers* v. *Chesley,* 190 Mo. App. 371; *Briel* v. *Exchange Nat. Bank,* 172 Ala. 475; *Germania National Bank* v. *Mariner,* 129 Wis. 544. An endorsement, followed by the word "trustee", made by a bishop holding property of the diocese as trustee and acting as such to the knowledge of the parties, is not binding on him personally. *American Trust Co.* v. *Canevin,* 184 Fed. 657, 107 C. C. A. 543 (construing Pennsylvania act). One endorsing a corporate note by signing his name and adding the word "Prest."

is not precluded by this section from showing by parol evidence that it was understood by the transferee that the endorsement was made as a corporate and not an individual endorsement. *Birmingham Iron Foundry* v. *Regnery*, 33 Pa. Super. Ct. 54. The Supreme Court of New York in *Megowan* v. *Peterson*, 173 N. Y. 1, dealing with this identical section 20 in a case where the signer of a negotiable instrument added to his signature the word "trustee", but did not disclose in the instrument itself the fact that he was trustee for the creditors of a certain firm, which was in fact so, was held not liable. The court said: "This may be insofar as innocent purchasers for value are concerned, but as to the payee named in the note a different rule prevails. * * * We do not understand that the statute to which we have alluded was to change the common law rule in this regard, which is to the effect that as between the original parties and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was delivered may be shown." Numerous cases of that state are cited in this opinion as authority for this holding, including that of *Bank* v. *Wallis*, 150 N. Y. 455. In that case the action was upon a primissory note signed by Wallis, who added to his signature "President", and by Smith who added to his signature "Treasurer". They were in fact president and treasurer of the Wallis Iron Works, a corporation, and the note was issued as an obligation for the corporation, and was discounted by the plaintiff bank. Andrews, C. J., in delivering the opinion of the court, said in reference thereto: "It may be admitted that if the bank when it discounted the paper, was informed or knew that the note was issued by the corporation, and was intended to create only corporate liability, it could not be enforced against the defendants as individuals." The doctrine announced in the New York cases and other courts of the land is summed up by the author in 3 R. C. L. 1095, as follows: "According to sounder doctrine, while where one signs as agent of another, *prima facie* presumption is that the words are merely *descriptio personae*, and therefore that the one signing is personally bound; yet it may be shown in an action between the original parties that it was

not so intended, and that, in fact, the real intention was to bind the principal whose name was disclosed in the signature of his agent *or who was well known by the payee to be the real party to be bound.* Although the agent may have contracted in his own name, nevertheless it is competent to show, by parol, the real facts, and that the contract was made on behalf of the principal, the agent not intending to assume any personal liability.'' The Supreme Court of Virginia in extenso reviewed the decisions of the various courts construing said section 20 of the Uniform Negotiable Instrument Law, and from this review the court held that where no such word as ''trustee'' or ''agent'', or the like, is placed after the signature of a party to a note, it is incompetent to show that he signed in any other capacity other than an individual, but if after a signature a word ''trustee'' is used, then the note becomes ambiguous, and it is competent to introduce oral evidence to show the surrounding circumstances and the understanding of the parties to determine the character in which the notes were signed. The distinction is drawn in that case between the signing without any words indicating capacity in which the party signs and the signing with some word as ''trustee'' indicating that he represents another. In the former, the party signing is liable. In the latter, his liability depends upon the understanding of the parties and the surrounding facts and circumstances at the time of the execution of the note. The mere addition of the word ''trustee'', according to the authority, makes the note ambiguous, which permits the introduction of parol testimony. *Coal-River Collieries* v. *Eureka Coal & Wood Co.*, 144 Va. 263, and the cases therein reviewed. Consonant with these holdings of courts in other jurisdictions, and those decisions cited of this court, it seems sound doctrine that whether or not where defendants signs a note as a truee, that as to holders in due course the principal must be disclosed on the fact of the note in order to relieve that defendant of personal liability, yet, as between defendant and the payee, or those taking the instrument with notice, the disclosure may be made *aliunde* and is a question of fact for the jury.

In line with this view, the court properly overruled the demurrer to the declaration. The instruction given at the instance of the plaintiff is complained of. This instruction merely recites that the notes sued on are on their face negotiable, but adds if the jury *should find that said notes were made by Livezey, trustee, for and on behalf of the defendant U. G. Young,* then they should find the defendant Young liable for any balance they might find due and unpaid on said notes, and if they should find a balance due thereon, then their verdict should be for whatever balance they might find due and unpaid thereon. The reference to negotiability of the notes in the plaintiff's instruction became immaterial in view of the express binding command of the court that there must be a finding of agency of Livezey for Young before the plaintiff could recover. This instruction read in connection with the one given at the request of the defendant, heretofore adverted to, properly propounded the law.

Counsel insists further that the verdict was wrong, because the notes were not due. The deed of trust contained an accelerating clause. Default was made—all the notes were declared due and the property was sold, and the proceeds of the sale were credited first, on the note that was due in two years from its date, and the residue on the note that was due in one year after date.

This leads us to a consideration of the last question raised on this appeal: Is the verdict contrary to the evidence? The evidence in many respects is conflicting. For instance, as to the return of the deed from Young to Parsons and the conversation attendant on such delivery. Young claims that he turned back the deed to Parsons pursuant to an understanding that was had between the parties at the time the deed was executed. Parsons denies that Young returned the deed to him for that purpose. As we have said, this testimony would have a bearing on whether or not Livezey in fact acted for Young. On this particular point—assuming for the purposes of the case that a written contract under seal may, by parol, be proved to have been delivered to the obligee upon a parol condition, that it was not to be binding until the happening of a future event, and may be avoided upon the further

proof that such event has not occurred—while Young was supported by the evidence of Hall, who was present at the time, it was such a conflict as made it proper for jury determination. In the main, Young's contention as to his not being bound unless the property conveyed to Livezey, trustee, was sold, is upborne by Livezey, trustee, and Livezey's wife, who was the daughter of Young. Turner's evidence contradicts this. But the jury were not held to a consideration alone of the oral evidence. The oral testimony of the defense was swept away by the affidavits of Turner, Livezey and Young. The contents of these affidavits have already been stated. Suffice it to say that they established the fact that Livezey acted for Young in taking the conveyance from Turner to himself, as trustee, and for no other person, and that he executed the deed of trust in question to secure the notes signed by himself as trustee, at the express command and request of Young. Briefly, all the papers executed inveigh against the defense orally sought to be set up in this case by the defendant. In fact, aside from the notes, the evidence would have supported a finding of the jury of the agency of Livezey for Young, and the latter's consequent liability for the unpaid purchase money on the real estate in question. The instruments admitted in evidence were proper testimony under the rule that it is competent to show the surrounding facts and conduct of the parties after making the agreement as throwing light upon their understanding at the time of making of the agreement. *White* v. *White,* 64 W. Va. 30; Mechem, Agency, sec. 443; 10 Cyc. 1051; 4 Thompson on Corp., sec. 5141 B. The court afforded the defendant an opportunity of presenting his whole defense to the jury. It was for them to decide. We find no error in the court's ruling that would authorize a reversal of the case. We must, therefore, affirm the judgment.

*Affirmed.*