KEGEL, Executor, and another, Appellants, vs. McCORMACK and another, Respondents.

*March 8—May 25, 1937.*

22

*Jos. F. Studnicka* of Milwaukee, for the appellants.
*Clarence P. Nett* of Milwaukee, for the respondents.
The following opinion was filed April 7, 1937:

ROSENBERRY, C. J. It appears from the findings of the trial court that the note in question was executed on May 18, 1928, as alleged in the complaint and was signed as therein alleged; that the note was secured by a mortgage of even date, executed by the Nor-Mac Realty Company; that in consideration of the execution of the note and mortgage, plaintiffs executed a warranty deed to the Nor-Mac Realty Company, of certain premises therein described; that at the time of the execution of the note James L. McCormack and N. J. Savignac were officers of the Nor-Mac Realty Company, and as such were authorized to execute the note on behalf of the company; that by mutual mistake of the plaintiffs and defendants the note was not corrected to conform with the other documents; that James L. McCormack signed in a representative capacity as president and N. J. Savignac signed in a representative capacity as secretary and treasurer of the Nor-Mac Realty Company; that—

"to make the said note conform to the actual intent and understanding of the parties said note should be amended and reformed and is hereby amended and reformed to add

the name Nor-Mac Realty Co. to said note, immediately preceding the official signatures of the defendants James L McCormack and N. J. Savignac."

The court further found that the transaction with respect to said action was a part of a definite understanding to dispose of a piece of real estate owned by the Kegel estate to the best advantage, which plan was understood by the parties and was known to be a transaction concerning the plaintiffs and the corporation; that no consideration of any kind moved to the defendants, James L. McCormack and N. J. Savignac, by virtue of the execution of the note in question.

While the note contains a clause to the effect that it "is secured by mortgage on real estate of even date herewith," it does not appear how, if at all, the note was described in the mortgage, the mortgage not having been offered in evidence.

The question presented for decision has not heretofore been considered by this court. It is the contention of the plaintiff that under the provisions of sec. 116.24, Stats., which provides:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability" (this is sec. 20, N. I. L.),—

the name of the Nor-Mac Realty Company not appearing upon the face of the instrument, the defendants may not show by parol evidence that it was the intent of the parties that the company was to be bound.

Sec. 116.22, Stats., provides: "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided." (Sec. 18, N. I. L.)

.The defendants contend, however, that sec. 116.21 (8), Stats., is applicable. Its material provisions are as follows:

"Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply: . . .

"(8) Where several writings are executed at or about the same time, as parts of the same transaction, intended to accomplish the same object, they may be construed as one and the same instrument as to all parties having notice thereof."

Sub. (8) is not a part of the N. I. L. and apparently appears only in the Wisconsin statute. However, this section by its terms has no applicability until ambiguity or omission appears. If sec. 116.24, Stats., makes the instrument certain and fixes the liability of a person signing in a representative capacity without disclosing his principal, then there is no ambiguity or omission, and sub. (8) does not apply. This brings us back to a consideration of the principal question unaided by the provisions of sub. (8).

There is a considerable split of authority as to what sec. 116.24, Stats., was intended to do. Some courts have held that if after the signature of the maker there appears the abbreviation "Agt., Pres., Sec'y," etc., the instrument is ambiguous and that parol evidence is admissible to clear up the ambiguity as between the original parties where the payee had knowledge of the fact of agency. *Phelps v. Weber* (1913), 84 N. J. Law, 630, 87 Atl. 469; *Lummus Cotton Gin Co. v. Cave* (1918), 109 S. C. 213, 96 S. E. 94; *Crocker Nat. Bank v. Say* (1930), 209 Cal. 436, 288 Pac. 69.

The question really turns upon the effect to be given to the words "but the mere addition of words describing him as an agent," etc. It is argued in some cases where the statute has been considered that this opens the door to parol evidence for the purpose of showing who was intended to be bound. This seems a strained construction. Section 20, N. I. L., makes it clear that if a person signing an instrument adds to his

signature words indicating that he signs for and on behalf of a principal, he is not liable on the instrument if he was duly authorized and discloses his principal. The last clause has been held to mean, by the great weight of authority, that if he adds after his name the descriptive words and does not disclose his principal, he does become liable. This construction is in accord with the great weight of authority as it stood prior to the enactment of N. I. L. and with the weight of authority in cases which have considered section 20, N. I. L. See cases cited 8 C. J. p. 157, note 75; Brannan's N. I. L. (5th ed.) p. 257 *et seq.;* 5 U. L. A. p. 138 *et seq.*

Where the name of the principal is disclosed, the weight of authority appears to be that parol evidence may be received to show that the parties did not intend the person signing as agent or in a representative capacity to be bound. This seems to be in accord with the principle of the Wisconsin cases although the precise question has not been considered.

In *Frailing v. Sieber* (1918), 168 Wis. 259, 262, 169 N. W. 607, plaintiff sought recovery against Hannah Sieber on the ground that the note given by her husband, John Sieber, was given as her agent and for an indebtedness for which she was liable. The court referred to sec. 1675—18, Stats. (now sec. 116.22, Stats., sec. 18, N. I. L.), speaking of the rule that no party can be charged as principal, quoted from Daniel, Neg. Inst. (5th ed.) § 303, as follows:

"The rule excluding parol evidence to charge an unnamed principal as a party to negotiable paper is derived from the nature of such paper, which being made for the purpose of being transferred from hand to hand, and of giving to every successive holder as strong a claim upon the original party as the payee himself has, must indicate on its face who is bound for its payment; for any additional liability not expressed in the paper would not be negotiable."

In that case, however, the abbreviation "Agt." or other abbreviation did not appear after the name of the maker.

In *Lipman v. Manger* (1924), 185 Wis. 63, 200 N. W. 663, there was an attempt made to show that the defendant, Clara Manger, was in fact the principal and that Arthur Manger, her deceased husband, signed as her agent. The court, however, adhered to the doctrine of *Frailing v. Sieber, supra,* and held that she was not liable because her name did not appear upon the instrument.

In *Nunnemacher v. Poss* (1903), 116 Wis. 444, 445, 92 N. W. 375, the defendant attempted to show that a note which read:

"Six years after date the Gymnastic Association of the North Side of Milwaukee (called in German 'Der Turn Verein der Nord Seite von Milwaukee') and we the undersigned promise to pay to Jacob Nunnemacher or order," etc.,—

signed by "Der Turn Verein der Nord Seite von Milwaukee," by Jacob Poss and four others, was the note of the association. It was held that there was no ambiguity and that parol evidence was not admissible; the note upon its face being certain.

In *Palmersheim v. Hertel* (1923), 179 Wis. 291, 191 N. W. 567, the defendant sought to show that a blank indorsement was understood and intended by the parties to be an indorsement without recourse. The court, in effect, over-ruled *Johnson v. Williard* (1892), 83 Wis. 420, 53 N. W. 776, and held that parol evidence was not admissible. This case is not in point, but indicates the attitude of the court with respect to implied agreements under N. I. L. 5 Wigmore, Evidence (2d ed.), § 2445.

The Agency Restatement states the law as follows:

"§ 324 (1) In the absence of reformation, an agent signing a negotiable instrument in his own name is a party to it

although the fact of agency appears upon it, unless the name of the principal also appears.

"(2) If the name of the principal appears upon a negotiable instrument, the agent is not liable if the document is interpreted as being executed by the agent only on behalf of such principal provided that the agent has power to bind the principal.

"(3) If the name of the principal appears upon a negotiable instrument and the agent does not appear unambiguously as a party, extrinsic evidence of an understanding that the agent shall not be a party to it is admissible as against any holder of the instrument who has notice of the agreement or who is not a holder in due course."

In this case the name of the principal nowhere appears upon the instrument sued upon. The fact of agency is made to appear by the abbreviations following the names of the signers. This, as declared by sec. 116.24, Stats., does not relieve the person signing from liability as principal. The defendants may not escape liability upon the instrument except by way of reformation. There are cases to the contrary. An opposite result has been arrived at in a number of jurisdictions. For cases, see 3 R. C. L. p. 1095, note 13.

It appears to be illogical to hold, as it is held in some jurisdictions, that when the abbreviation "Agt." or other like abbreviation appears after the signature of a person on an instrument where the principal is not disclosed, it creates an ambiguity as between the original parties but does not charge a subsequent holder for value with notice of the ambiguity or put him up on inquiry in respect to it. That conclusion also seems to fly in the face of the provision that no person is liable upon a negotiable instrument whose signature does not appear thereon. It may be true, as argued in some of the cases, that this interpretation does not accord with ordinary business practice, but the law prior to the enactment of N. I. L. was just as much out of accord with business practice as it is now. It must have been the intention of the

framers of the N. I. L. to do something to resolve the doubt. It is considered that what they did was to say that in the absence of reformation the mere addition of descriptive words to the signature of the person signing does not relieve him of liability under the section.

There seems to be no doubt that a negotiable instrument may be reformed as between the original parties as may any other simple contract and that reformation will be decreed upon the same grounds as reformation is decreed in other cases. It seems to be a well-established principle of law that reformation cannot be adjudged where the person or party upon whom liability is to be fastened is not a party to the action. *First Nat. Bank of Union v. Fessler* (1915), 84 N. J. Eq. 166, 92 Atl. 914; *San Bernardino Nat. Bank v. Andreson* (1893), 3 Cal. Unrep. 771, 32 Pac. 168.

It appears without dispute from the evidence that the defendants, who were the managing officers and controlling stockholders of the Nor-Mac Realty Company, permitted the corporate charter to be forfeited as of January 1, 1931, for failure to file reports as required by statute. While the declaration of forfeiture by the secretary of state under the provisions of sec. 180.08, Stats., does not *ipso facto* work a complete forfeiture of corporate rights (*West Park Realty Co. v. Porth* (1927), 192 Wis. 307, 212 N. W. 651), in this case it was followed by a surrender of its charter some time before the commencement of the action.

On March 28, 1930, McCormack and his wife conveyed the mortgaged lot back to the corporation along with other lands held by them for the benefit of the company, and on or about March 30, 1930, the defendants caused the corporation to convey all of its real estate to the Park Savings Bank, and thereafter a number of judgments were taken against the company. Shortly after the transfer, Kegel learned of it and demanded payment of the note. Under these circum-

stances it is clear that reformation of the instrument so as to make the company liable thereon and release the defendants would be highly inequitable and unjust. A remand of the record for the purpose of permitting the Nor-Mac Realty Company to be made a party would be futile. Under the circumstances equity would deny such relief. Not only that, but after having caused the company to make payments or payments to be made by company check, the defendants now attempt to set up the statute of limitations as against their personal liability. Having caused these payments to be made for their benefit, the statute did not begin to run until the date of the last payment, March 29, 1930. This action was begun July 12, 1935, well within the six-year period.

*By the Court.*—Judgment appealed from is reversed, and cause remanded to the trial court with directions to enter judgment in favor of the plaintiffs and against the defendants for the amount due upon the note.

The following opinion was filed April 27, 1937:

FAIRCHILD, J. (*dissenting*). All but one of the original parties to the agreement are before the court. The absent party is a defunct corporation, but just what was agreed to and on whom the liability was to rest are known. The corporation can neither be helped nor harmed by being made a party now. The right of no innocent third-party is here involved. Evidently four papers were executed at the time: A deed conveying land to a corporation; a mortgage back from the corporation which is still owned by plaintiff; a letter containing a statement of account; and a note. The deed ran to the corporation; the mortgage to the grantor was signed by the corporation by its officers. The letter was the letter of the corporation and subsequent payments were made by the corporation. When it came to signing the note, the name of the corporation was, by inadvertence, omitted and

the note contains only the officers' names with their official designation. It was to have been the corporation's note; it is plainly marked a mortgage note and is a part of the transaction. *Thorp v. Mindeman,* 123 Wis. 149, 101 N. W. 417. Under these facts, I cannot agree to a ruling that a clear mistake, that is, the omission of the name of the corporation above the signatures of the officers, must so control as to visit the liability upon the individuals who happened to be officers of the corporation.

A careful examination of the cases referred to in the majority opinion demonstrates that in the factual situation here presented, namely, where the original payee is suing an individual who has signed as agent, without disclosing his principal on the note, the number of jurisdictions excluding parol evidence of intention is so nearly equal to that of those admitting it that the distinction of being the majority rule may be assigned to neither. Sec. 116.24, Stats., was not intended to eliminate all possibility of reconstructing an actual transaction and correcting mistakes or preventing fraud where the instrument, without doing violence to anyone's rights may be judicially amended to represent the actual agreement. The parol-evidence rule was not repealed, and with qualifications and limitations is applicable to bills and notes sufficiently to meet the needs, it seems to me, of the cases similar to the one now before us. The parol-evidence rule presupposes the existence of a valid written contract, and the contract in this case was that the corporation would pay the debt evidenced by the note and mortgage. The question as to whether the writing is the complete contract of the parties, while usually determined from the writing itself, where the writing suggests questions or ambiguity or doubtful completeness, then is properly decided, at least between the original parties, by reading the contract in the light of surrounding circumstances and thus bringing before the court by

parol evidence the entire contract, for the purpose of visiting liability upon the proper parties and excusing from liability those who by mistake have been made to appear to be responsible. An agreement which by mistake in transcription results in the creation of an instrument evidencing a different agreement ought not, while the original parties only are involved, to be permitted to become an instrument of injustice. The case of *Germania Nat. Bank v. Mariner,* 129 Wis. 544, 109 N. W. 574, seems to me to commit Wisconsin to the proposition that an ambiguity or omission may exist when an officer of a corporation has not described himself as such officer and consequently would be authority for the proposition that an ambiguity arises where he signs the note with the designation, "Pres.," and another officer of the same corporation signs the note with his name with the designation, "Sec. & Treas." Of course in the *Mariner Case,* the note in its body promised that the corporation would pay the debt, but the defendant signed his individual name without any attempt at description or declaration that he was doing so for the corporation. The terms of the note were there held to be sufficiently ambiguous to apprise a purchaser for value without other notice of the possibility that Mariner was not intended to be personally liable. Here the question is of an ambiguity sufficient to permit the introduction of parol evidence of the true intention of the parties, between the parties themselves. The two things may be different. In one case there is the policy of safeguarding the circulability of paper and requiring that ambiguity on the face of the instrument be marked enough to be notice. to the stranger to the transaction who may wish to buy. Where the original parties to a written contract are involved, the policy is merely to require them to stand by what they have written unless they have written something which is equivocal. The stranger is entitled to assume what the original party is not. Evi-

dence was admitted in the *Mariner Case* to explain the purpose of the individual signature. The doctrine of that case so far as ambiguity is concerned and in the case of *Thorp v. Mindeman, supra,* seems to me authority for ruling here that sec. 116.24 does not preclude the defendants from the defense of no liability and to warrant under the circumstances of this case a resort to sub. (8) of sec. 116.21, Stats., which reads:

"Where several writings are executed at or about the same time, as parts of the same transaction, intended to accomplish the same object, they may be construed as one and the same instrument as to all parties having notice thereof."

I do not find that the law which applies to this situation gives to the plaintiff who knows all the facts a right to rely upon a mistake and secure a judgment against those to whom it was never intended to charge liability. There is enough of omission apparent in this note to warrant referring to the other instruments executed at the same time in the same transaction.

A leading case permitting establishment of a defense by parol evidence is *Megowan v. Peterson,* 173 N. Y. 1, 65 N. E. 738. There the original payee sued as an individual one Peterson who had signed a note, "Charles G. Peterson, Trustee." Peterson was trustee for the purpose of liquidating a partnership. Parol evidence of the intention of the parties was admitted and the court held that sec. 20, N. I. L. (sec. 116.24, Stats.), was not—

"designed to change the common-law rule in this regard, which is to the effect that, as between the original parties and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was delivered may be shown."

This case is expressly approved in *New Georgia Nat. Bank v. Lippmann,* 249 N. Y 307, 164 N. E. 108, where *Metcalf v. Williams,* 104 U. S. 93, was also cited. In the

latter case a check was signed, "E. P. Aistrop, Sec'y. W. G. Williams, V. Pres't." The plaintiff had knowledge of the fact that this was meant by the parties to be a check of the Montpelier Female Humane Association. The court gave effect to the instrument according to that intention. Other cases permitting the introduction of parol evidence as a defense to personal liability in similar situations are: *Hazlett v. Willaume,* 76 Fla. 514, 80 So. 309; *Tampa Investment & Securities Co. v. Taylor,* 272 Ill. App. 541; *G. C. Riordan & Co. v. Thornsbury,* 178 Ky. 324, 198 S. W. 920; *Huntington Finance Co. v. Young,* 105 W. Va. 405, 143 S. E. 102. In a Wisconsin case, *Shearer v. Pringle,* 203 Wis. 164, 233 N. W. 623, reformation of an instrument extending time of payment of note signed, "Nora Mae Pringle, Admx.," was allowed, relieving Mrs. Pringle from individual liability.

Whether we say the omission apparent in the note amounts to an ambiguity between the original parties or their representatives, or rest on the proposition that a mistake was made in transcribing the agreement, my position is that, at least until this decision, no rule governing the administration of justice in this state required, under circumstances such as are here, a holding, when the original parties only are involved, that at no time after the mistaken signature is attached to the note, any right or remedy exists to protect the one mistakenly bound from the effects of the mistake. It was the intention of all the parties to bind the corporation to pay the note and the corporation only.

A motion for a rehearing was denied, with $25 costs, on May 25, 1937.