# CHARLESTON.

H. H. HARVEY *v.* T. P. DWYER *et al.*

(No. 6497)

Submitted October 22, 1929.     Decided October 29, 1929.

*Livezey, Hogsett & McNeer*, for plaintiffs in error.
*Scott, Graham & Wiswell*, for defendant in error.

LIVELY, JUDGE:

At the conclusion of plaintiff's evidence, the court heard defendants' evidence, the jury having retired, in order to determine its admissibility, and after the defendants had tendered all their evidence, which was preserved by the stenographer, the court struck it out, on motion of plaintiff, the jury returned to the court room and was instructed to return a verdict for the full amount of plaintiff's claim, which was accordingly done and a joint judgment was entered against

all of the defendants who had been served with process. Defendants moved to set aside the verdict on grounds then stated, the motion was overruled, and this writ followed.

The crux of the controversy as presented by the record, is whether defendants are jointly liable for the whole debt, or liable only in proportion to the interest each received, in the purchase of the real estate involved.

The declaration contains common counts in assumpsit, and a special count wherein it is charged, in substance, that R. P. Aleshire, Trustee, had purchased certain lots of land from Enslow Park Realty Company and executed therefor certain negotiable promissory notes, describing them, dated October 3, 1925, in the aggregate sum of $25,465.00 to the grantor, which, on or about that date, sold and transferred them for valuable consideration to Thomas H. Harvey, who afterwards transferred and delivered them to plaintiff, H. H. Harvey; that said notes were secured by trust deeds on said lots, there being a separate trust deed on each lot, each trust deed securing the payment of three of the notes, describing them; that on October 3, 1926, Aleshire, Trustee, and all of defendants entered into a written trust agreement, called a declaration of trust, wherein it was stipulated and agreed that Aleshire, Trustee, had purchased said lots for defendants and that said notes and trust deeds were executed by him for them, and they gave their assent to all things done by him; that said notes before they became due were transferred and delivered by the payee to said Thomas H. Harvey, by endorsing its name on the back thereof (with two other endorsers) and delivering them to him, who afterwards for value transferred them mediately to plaintiff; that the notes were all due, and demand had been made for payment and refused, all to the plaintiff's damage of $40,000; and hence the suit.

Defendants pleaded the general issue. Plaintiff testified in his own behalf and tendered a portion of the deposition of Thomas H. Harvey, but upon the court's ruling that all the deposition should be read, else the part read would be stricken out, plaintiff withdrew the part read to the jury and the court stated to the jury and counsel that the part read had been

stricken out. So, all we have in the record on which the judgment is based is the evidence of plaintiff and the paper writing denominated the "declaration of trust". Plaintiff's evidence consisted of the introduction of the notes, sixty-six in number, all of which were due; that they were unpaid; that he was the owner, they having been assigned to him and his two sisters by his uncle, Judge Thomas H. Harvey, on May 22, 1926, and that he had acquired by assignment the interest of his two sisters in said notes; that the notes had not been paid and there were no credits or sets-off against them; that at the time Judge Harvey delivered him the notes, there was also delivered to him by Judge Harvey a copy of a declaration of trust which he then introduced in evidence, together with the original declaration of trust, which plaintiff seemed to have in his possession. Defendants objected to the introduction of both the copy and original. On cross-examination it was shown that the notes were a gift from Judge Harvey to plaintiff and his two sisters; that the notes were secured by separate deeds of trust on each of the twenty-two lots, three notes being secured on each lot, and that no effort had been made to enforce the trust deeds.

Do these facts as they appear from this record authorize a directed verdict and judgment against all of the defendants jointly? That is the controlling question presented by the record as it now stands.

The material portions of the declaration of trust dated October 3, 1926, (signed by Aleshire, Trustee, and all of defendants, acknowledged by them on October 13, 1926, and recorded in the county clerk's office on October 14, 1926, and setting out that a deed that day had been executed by Enslow Park Realty Company, conveying to Aleshire, Trustee, the lots, describing them, and that such purchase was for and on behalf of defendants) are as follows:

"Whereas, in the purchase of said property part of the purchase price is evidenced by sixty-six (66) notes aggregating Twenty-five thousand, four hundred and sixty-five ($25,465.00) dollars, payable as provided for in Deeds of Trust on said lots.
Whereas, the said notes and Deeds of Trust were

executed by the said R. P. Aleshire, Trustee, for the said parties, now, therefore, the said Aleshire declares that he has acted for said parties as such Trustee and the assent of all of said parties is given to the things done by the Trustee.

Whereas, the property was paid for in the following shares and proportions, viz: Ten-fortieths (10/40) for the use and benefit of T. P. Dwyer; eight-fortieths (8/40) for the use and benefit of S. W. Patterson, four-fortieths (4/40) for the use and benefit of Otho Fisher, one-fortieth (1/40) for the use and benefit of Shelby Christian, two-fortieths (2/40) for the use and benefit of S. G. Risen, one-fortieth (1/40) for the use and benefit of Blanche Bromley, four-fortieths (4/40) for the use and benefit of Mary D. Sheon, and ten-fortieths for the use and benefit of the Aleshire-Harvey Company, a corporation.

Now, this Indenture, witnesseth, as follows: In consideration of the premises, the said R. P. Aleshire, Trustee, hereby declares that as, and from the date of the said Deed, he has held and now holds the said lots as to and undivided ten-fortieths (10/40) part thereof in trust for the said T. P. Dwyer; as to another undivided eight-fortieths (8/40) part thereof, in trust for the said S. W. Patterson; as to another undivided four-fortieths (4/40) part thereof in trust for the said Otho Fisher; as to another undivided one-fortieth (1/40) part thereof in trust for the said Shelby Christian; as to another undivided two-fortieths (2/40) part thereof in trust for the said S. G. Risen; as to another undivided one-fortieth (1/40) part thereof in trust for the said Blanche Bromley; as to another undivided four-fortieths (4/40) part thereof in trust for the said Mary D. Sehon; as to the remaining undivided ten-fortieths (10/40) part thereof in trust for the said Aleshire-Harvey Company, a corporation.

And the said T. P. Dwyer and Effie Dwyer, his wife; S. W. Patterson and Mary C. Patterson, his wife; Otho Fisher and Louvinnie Fisher, his wife; Shelby Christian and Mary Christian, his wife; S. G. Risen, unmarried; Blanche Bromley, unmarried; Mary D. Sehon and Douglas Sehon, her husband, and Aleshire-Harvey Company, a corporation, hereby respectively declare that the said

R. P. Aleshire, Trustee, shall have the power to sell and convey, or mortgage the said lots, or any part thereof, at such time or times, for such price, or prices, and upon such terms as the said R. P. Aleshire, Trustee, shall think fit, and to execute such instruments and do such acts in relation to said premises as he shall deem proper, and for the best interest of all concerned, free of all claims of dower and *or* courtesy.

Witness the following signatures and seals this 3rd day of October, 1925.'' Then follows the signatures, acknowledgment, and clerk's certificate of recordation.

Recovery on the negotiable notes, under the special count, was not warranted by this evidence, for there is a failure to show that the principals of Aleshire, Trustee, whose name only appears on the notes, were known to Judge Harvey when he bought the notes, or to Enslow Park Realty Company, his assignor, the payee on the face of the notes. The presumption, under the law of merchants, that Aleshire, Trustee, was acting in his individual capacity and therefore liable, has not been overcome by this evidence which now remains in the record. It must be shown that Aleshire disclosed his principals to the realty company or that they knew them, or that Judge Harvey knew the principals and their respective liabilities at the time of the purchase of the notes, in order to overcome the prima facie presumption that the obligations were those of Aleshire alone. This seems to be the well settled law merchant. *Finance Co.* v. *Young,* 105 W. Va. 405; *Craigen* v. *Lovell,* (U. S.) 27 L. Ed. 903; *Manufacturers' etc. Bank.* v. *Love,* 43 N. Y. Supp. 812; Mechem on Agency, (2nd Ed.), Vol. 2, p. 1319, sec. 1736. Under the law of merchants, there is a well recognized exception to the liability of an after-discovered principal, which Mechem states as follows: ''Persons dealing with negotiable instruments are presumed to take them on the credit of the parties whose names appear upon them; and a person not a party cannot be charged upon proof that the ostensible party signed or endorsed as his agent,'' and the author says that this doctrine has been applied in many cases, citing them.

But there is another principle of law which applies here, namely: where the undisclosed principal has taken the benefits of the transaction by which the negotiable notes came into existence, even if there is nothing on the face of the notes to indicate that the maker was acting for another, and retains those benefits, which, in good conscience, he should not retain at the expense of a third party, the person holding the notes need not rely on them for recovery, but may reject them, and recover from the principal, afterwards discovered, on the original consideration for which the notes were given, suing on the common counts in assumpsit. 8 C. J., p. 168, latter part of section 280. To sustain this principle, *Payton* v. *Barnett,* (N. Y.) 23 N. E. 24; *Chemical Bank* v. *Bank of Chicago;* (Ill.) 40 N. E. 328; *Harper* v. *Tiffin National Bank,* (Ohio) 44 N. E. 97; *Clark* v. *Van Reimsdyk,* 9 Cranch. 153, 3 L. Ed. 688; and cases from Georgia, Massachusetts, Indiana and Iowa are cited; to which may be added *Merrill* v. *Kenyon,* 48 Conn. 314, which holds that "where goods are sold to a person who is in fact an agent of another and on his credit, but without knowledge of agency on the part of the seller, the latter has the right to elect to make the principal his debtor on discovering him." In that case the agent had given two negotiable notes in his own name without anything thereon indicating agency. In the Georgia case, *Coaling Co.* v. *Howard,* 130 Ga. 807, 21 L. R. A. (N. S.) 1051, land had been sold and conveyed to a person described as trustee, who was an undisclosed agent or trustee of defendant. He gave notes signed by himself as trustee, and it was held that action could not be maintained on the negotiable notes, but recovery could be had on "the original transaction" for the amount of unpaid purchase money. The reason underlying this well established principle of law is sound. A party benefitted by a transaction made by another for his benefit should pay, although he was not known to the third party at the time the transaction was had. We think the trust agreement was properly admitted in evidence to show who were the persons for whom Aleshire, Trustee, was acting, and who received benefit, but not to show that the realty company or Judge Harvey, at the time the notes were given to the former and

transferred by it to the latter, knew of its terms or purport; and it will be noted that this trust agreement while dated on October 3rd was not acknowledged until ten days later, and a day or so after its acknowledgment was placed to public record. There is no evidence remaining in the record which discloses when Judge Harvey received the copy of the trust agreement. It was in his possession about seven months after he had purchased the notes. The trust agreement was admissible to show plaintiff's discovery of the principals, and as bearing upon his right to recover against them under the common counts, and not on the notes. Recovery on the negotiable notes, under the evidence, is not tenable, for as above set out, these principals were not known either to the realty company or Judge Harvey when the notes were given and transferred. We can look to the trust agreement (without taking into consideration what relates to the notes therein mentioned) to ascertain if there is liability on defendants. Are they jointly and severally liable for the purchase price of the lots? This trust agreement says that the property was paid for in named proportions, ten-fortieths for the use and benefit of Dwyer, and different interests to the others in proportion to the respective amounts of their payment; and the trustee declares that he holds the lots for defendants in the proportions named. The benefits of the transaction are not equal in amounts. Defendants evidently did not intend to be equally liable. The agreement in that respect is ambiguous, and parol testimony was admissible to clear the ambiguity. Defendant attempted to clear that question of ambiguity, but the evidence was rejected. We cannot say as a conclusion of law that each defendant is liable to plaintiff for the whole purchase price, viewing this trust agreement by its four corners. The judgment is a joint one against all of the defendants except probably one, Mary D. Sehon, who was not served with process. The trial court evidently came to the conclusion that defendants were liable on the notes made by Aleshire, their agent, as set out in the special count. We conclude that a joint recovery cannot be predicated on the special count setting up the negotiable notes, but only on the common counts; and on the theory of recovery on the common

counts, defendants having received benefits, it was error to hold as a matter of law that the trust agreement warranted recovery against each defendant for the full amount of the purchase money due.

The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*