# CHARLESTON.

H. H. HARVEY *v.* T. P. DWYER *et al.*

(No. 6800)

Submitted October 28, 1930.   Decided November 18, 1930.

(Rehearing denied January 19, 1931)

*Scott, Graham & Wiswell* and *C. W. Freeman,* for defendants in error.

*Livezey, Hogsett & McNeer* and *Jno. T. Delaney,* for plaintiff in error.

LIVELY, PRESIDENT:

The question presented by this writ of error is whether defendants are jointly liable to plaintiff on the notes sued upon.   Reference to the parties as plaintiff and defendants will be made as they appeared in the trial court.   Defendants claim they are not jointly liable, and at the conclusion of the

evidence moved for an instructed verdict in their favor, which was overruled. Plaintiff, on the other hand, claims that defendants are jointly liable, and at the conclusion of the evidence moved for an instructed verdict in his favor, which was given. Defendants here insist that such action was error; and say that, at least, the question of their joint liability should have been submitted to the jury. A former trial, resulting in verdict and judgment for plaintiff, came to this Court and was reversed. *Harvey* v. *Dwyer*, 108 W. Va. 85; 150 S. E. 235. Reference to that case will give the material parts of the ''declaration of trust'' around which the controversy revolves, and which forms the basis of defendants' contentions. That paper was the repository of the understanding and agreement between the defendants and their trustee relative to the 22 lots which had been purchased by him from Enslow Park Realty Company for them. The first trial was reversed because the notes sued on and set out in the special count were signed by R. P. Aleshire, Trustee, and the prima facie presumption that they were his individual notes had not been overcome by plaintiff, and therefore judgment could not be taken against his undisclosed principals to whom the holder of the notes could not look for payment if he did not know them when he took the notes. There was nothing in the evidence in the first trial to show that either Judge Harvey or the Enslow Park Realty Company knew that Aleshire was trustee for defendants at the time the notes were taken by the latter, or purchased by the former. It was also held that plaintiff could not recover against defendants jointly on the common counts in the declaration on the theory of benefits received for the reason that on the face of the declaration of trust, the benefits appeared to be unequal in that regard. The judgment was against all of defendants jointly and was not warranted under the common counts. On this trial, the common counts are not involved. Plaintiff rebutted the prima facie presumption under the law merchant of individual liability of Aleshire by showing that the payee of the notes at the time they were given knew that defendants were principals of Aleshire, Trustee, and that

Judge Harvey, when he purchased the notes, also knew them to be his (Aleshire's) principals.

Defendants conceiving that the trust agreement, an exact copy of which was presented to Judge Harvey at the time he purchased the 66 negotiable notes sued on, but not then acknowledged, was ambiguous as to the joint liability of defendants, and therefore Judge Harvey was put on notice of their separate liability, introduced evidence showing the circumstances surrounding the parties to the trust agreement, their situation with relation to each other and the property purchased, what they did in making the purchase, and their understandings that each should be liable only for the amount of interest each had taken in the joint adventure, represented by the shares in fortieths, as set out in the trust agreement, namely, "Ten fortieths (10/40) for the use and benefit of T. P. Dwyer, Eight fortieths (8/40) for the use and benefit of S. W. Patterson," etc., naming the fortieths held by each of the other defendants in the lots purchased. The evidence shows that Aleshire, a member of the Aleshire-Harvey Company, a real estate dealer, and Wilson, an officer of Enslow Park Realty Company, devised a method by which to make sale of the 22 lots owned by the Enslow Park Realty Company, and were assisted to some extent by Thomas W. Harvey, a nephew of Judge Harvey. The trust agreement plan was formed by which the lots were to be conveyed to Aleshire, Trustee, for a down payment and the remainder to be evidenced by notes given by the trustee secured by deeds of trust on the lots. The down payment was the money paid by those who entered into the adventure. Each of defendants paid to the trustee in cash 25% of the amount of interest taken by each, and this money was used in part for the down payment, and each of defendants executed his separate notes, payable in one, two and three years, to the trustee for the balance owing to the common fund. Accordingly, the Enslow Park Realty Company, on October 3, 1925, deeded the lots to Aleshire, Trustee, for a down payment of $7,500.00, and the balance of $25,465.00 represented by the 66 notes sued on, signed by the trustee, payable to vendor in accordance with

the terms of 22 deeds of trust of the same date, executed by the trustee to Armentrout, Trustee, for the said Realty Company, and the assumption of payment by the vendor of certain liens on the lots. It appears that defendant Dwyer agreed to go into the trust on that day and agreed to take a ten fortieths interest, and paid to the trustee $2,500.00 and executed his three notes of $2,500.00 each, payable in one, two and three years. The other defendants afterwards between that date and October 13, 1925, went into the trust agreement for the interests set out to them therein, and each paid the 25% down payment and executed like notes to the trustee. None of these notes to the trustee were paid, and were found among the papers of the trustee after his death. The trust agreement was dated October 3, 1925, but was not acknowledged until the 13th of that month. Some of the parties to the trust did not know others who joined therein; and some say they did not know that Aleshire, Trustee, had executed the notes sued on; that they did not give authority to sign for them, and did not know until a year or so after the trust was executed that he did so; and all say their understanding and conversations were to the effect that each member of the trust was liable only for the amount of the notes executed by each to Aleshire, Trustee.

The notes sued on were purchased by Judge Harvey from Enslow Park Realty Company on October 7, 1925, and he then had before him a carbon copy of the trust agreement. By that paper, he knew who were the principals of Aleshire, Trustee. They all later, on October 13th, acknowledged that paper. Thomas W. Harvey, a nephew of Judge Harvey, testified that a short while, possibly a day or so, before Judge Harvey purchased the notes on October 7th, he talked with Judge Harvey, and told him how the various interests of defendants were to be paid for. He says: ''I explained the whole thing to him.'' This witness says that it was his understanding that defendants, including the Aleshire-Harvey Company, were to be responsible only to the extent of the notes given by them to the trustee. He does not say explicitly that he told Judge Harvey of this understanding. It appears

that Judge Harvey, when he purchased the notes, required Don Miller, then reputed to be a very wealthy man, and who was interested in the Enslow Park Realty Company, to endorse the notes, as well as a Mr. Blair Wilson, sales agent for the Realty Company.

The evidence of defendants, except the notes executed by them to the trustee, and which were found with the papers of Aleshire after his demise, was stricken out on motion of plaintiff. It also appears that after the first of the notes sued on became due, plaintiff, by two letters, dated November 16, 1927, and September 28, 1928, notified each of defendants that he held the notes and requested payment. No response was received by him from any of them.

Was it error to take the case from the jury and give the peremptory instruction to find for plaintiff?

It appears that Judge Harvey, when he purchased the notes, knew the arrangement by which the property was sold and how it was to be paid for by defendants. The trust agreement itself would put him on notice of the various interests purchased by the defendants, and while the paper itself says that the property was paid for in the following proportions, viz: "Ten fortieths to T. P. Dwyer," etc., he must have known that the property had not in fact been paid for, as "the whole thing was explained to him" before he purchased, by Tom Harvey. The face of the paper itself evidenced that each member of the trust was to pay toward the purchase the amount which he subscribed to the trust, and receive therefor a corresponding interest in the property. Under these circumstances, under which the notes were purchased, we think extraneous evidence was admissible to show the surrounding circumstances, the situation of the parties and their subsequent acts in carrying out the agreement. But the evidence offered by defendants went beyond that, and detailed the declarations, and interlocutions of the parties to the trust agreement, and their understandings with each other as to their liabilities under the agreement. Clearly that portion of the evidence offered was not admissible and that portion should have been stricken out. *Uhl* v. *Railroad Co.*, 51 W. Va. 106;

*Smyth* v. *Realty Co.*, 97 W. Va. 40; *Collins* v. *Treat,* 108 W. Va. 443. In the former opinion (108 W. Va. 85-92), in discussing the trust agreement under the alleged joint liability of defendants under the common counts (the special count on the notes not having been sustained by the evidence) we said: "This trust agreement says that the property was paid for in named proportions, ten fortieths for the use and benefit of Dwyer, and different interests to the others in proportion to the respective amounts of their payment; and the trustee declares that he holds the lots for defendants in the proportions named. The benefits of the transaction are not equal in amounts. Defendants evidently did not intend to be equally liable. The agreement in that respect is ambiguous, and parol testimony was admissible to clear the ambiguity. Defendants attempted to clear the ambiguity, but the evidence was rejected. We cannot say as a conclusion of law that each defendant is liable to plaintiff for the whole purchase price, viewing the trust agreement by its four corners. The judgment is a joint one against all defendants except probably one Mary D. Sehon who was not served with process. The trial court evidently came to the conclusion that defendants were liable on the notes made by Aleshire, their agent, as set out in the special count. We conclude that a joint recovery cannot be predicated on the special count setting up the notes, but only on the common counts; and on the theory of recovery on the common counts, defendants having received benefits, it was error to hold as a matter of law that the trust agreement warranted recovery against each defendant for the full amount of the purchase money due." The majority of the court are of opinion that this language is the law of the case and without removal of the ambiguity by evidence, would preclude peremptory instruction for a joint verdict against defendants on the notes now shown to have been executed by the trustee and assented to by all of defendants. The admissible evidence (that showing the circumstances and situation of the parties and their subsequent acts) does not clear the ambiguity in the agreement as to the joint liability of defendants on the notes sued on. It only shows that the property

*was not paid for* as therein stated; but that each defendant had paid 25% of the amount to the trustee (except possibly Aleshire-Harvey Company) and had given notes for the balance to the trustee. "The property was paid for," by part payment in cash and notes for the balance to the trustee. There is also evidence tending to show that Judge Harvey was informed of the whole purpose of the transaction. The ambiguity not being cleared by the legitimate evidence, the ambiguity remains, and, therefore, the court should not have construed it, but left its meaning to be ascertained by the jury under proper hypothetical instructions. *Watson* v. *Buckhannon River Coal Company*, 95 W. Va. 164. It was error to strike out all of defendants' evidence, and it was likewise error to give a peremptory instruction for plaintiff.

The verdict and judgment will be set aside and a new trial awarded.

*Reversed; new trial awarded.*

LIVELY, PRESIDENT, (dissenting) :

In the above opinion, I have tried to give the reasons and conclusions of the majority of the court. The discussion in the former opinion, copied in the above opinion, dealt with the status of the case there presented for a joint recovery on the common counts. The notes of Aleshire, Trustee, were out of the case and no recovery of any character could be had on them, for reasons shown in the opinion and crystalized in the first point of the syllabus. The question was upon a recovery upon a promise to pay for benefits received, and the agreement, with the notes of the trustee out of it, showed that benefits received under the agreement were not equal, and that the writing showed that the signers, as among themselves, did not intend to be equally benefited or equally liable. Moreover, the paper, on its face, showed that the property purchased was paid for in certain proportions. The writing showed that Aleshire had purchased the property and had given his notes as trustee, and yet, in another part, it stated that the property was paid for in certain proportions. Payment for property is usually made to the vendor. To whom had the purchase money been paid?

The writing was ambiguous as to the liability of defendants under the common counts for benefits received and precluded a joint judgment against them as receiving equal benefits, and so we said that where several undisclosed principals in a land sale have accepted and hold the benefits of the transaction, the extent of their liability under the common counts in assumpsit is to be determined by a proper construction of the written agreement under which they purchased, aided by parol testimony if the agreement be ambiguous. See second point of the syllabus in former opinion. The evidence on this trial, as pointed out in the above opinion, shows that the notes sued on were given by Aleshire, Trustee, for defendants. They were liable for those notes, as much so as if they had signed their names thereon. In the trust agreement, they and their trustee recite that by deed of October 3, 1925, Enslow Park Realty Company had, on the day of that agreement, conveyed to Aleshire, Trustee, the 22 lots, describing them; that he, the trustee, had evidenced the balance of purchase money by the 66 notes, aggregating $25,465.00, payable as provided for in deeds of trust on the lots, and that said notes and deeds of trust were executed by said trustee for said parties acting in their behalf; and that the "assent of said parties is given to the things done by the Trustee." Here we have a clear and concise declaration that the lots were purchased and the notes given on behalf of defendants. Defendants, or some of them, say they never knew that Aleshire had given these purchase money notes until a year after the transaction, and some of them say that they thought Judge Harvey held the notes which they had executed to the trustee. They cannot be heard to contradict their plain writing. No fraud is charged. They all admit that they signed and acknowledged the paper. *Ferrell* v. *Ferrell,* 53 W. Va. 515. Whatever may have been their understanding respecting their liability as between themselves on the notes executed to the vendor, cannot change the clear legal import of the writings which they executed. The admissible evidence of defendants explains the trust agreement by showing that they "paid for the property" by giving to their trustee 25% cash for the interests of each in the joint adventure, and by giving notes to him at 1, 2 and 3 years for the deferred pay-

ments. They went into a real estate speculation by which they jointly purchased land, for a resale, placed it in the hands of a trustee to sell, convey or mortgage the same at such times and prices and upon such terms as he might think for the best interest of all concerned, free from dower and curtesy. There was no conflict in the admissible parol testimony and the ambiguity in the agreement being cleared, the special count setting up the notes being sustained, it became the duty of the court to construe the agreement and so instruct the jury. *Watson* v. *Buckhannon River Coal Co.*, 95 W. Va. 164. The only doubt I have on the correctness of the court's ruling is because of the evidence of Tom Harvey that he "explained the whole thing" to Judge Harvey before the latter purchased the notes. But on the whole, I would affirm the judgment.

I am authorized to say that JUDGE MAXWELL concurs in this note.