501 So.2d 24 (1986)
Oren BROWN, Appellant,
v.
Claudia BROWN, Appellee.
No. 86-141.
District Court of Appeal of Florida, Fifth District.
December 24, 1986.
Rehearing Denied January 28, 1987.
*25 Frank M. Townsend of Townsend & Townsend, Kissimmee, for appellant.
Kelvin L. Averbuch and Robert Murrell of Sam E. Murrell & Sons, Orlando, for appellee.
COWART, Judge.
The appellant/grantor, Oren Brown, appeals a judgment reforming a deed by which he made a gift of 80 acres of land to his son, Frank Brown, and his daughter-in-law, the appellee Claudia Brown.
The grantor-father, a cattleman and landowner, gave his son Frank and his daughter-in-law Claudia a house trailer and allowed them to live in it out on his ranch lands. The son helped the father with his cattle. The son asked the father if the father cared whether the son built a house near the location of the trailer. The father did not care. No location was discussed. The father, the son, and the daughter-in-law signed and delivered 90 day promissory notes to a bank for a total of $30,000 and the proceeds were used to build the house. At some point the father formed an intent to give the younger couple some of his land, though of no particular location or amount. After construction commenced, the father, citing "love and affection" as sole consideration, executed a deed of the 80 acres to the son and daughter-in-law. The father testified that he had intended to deed an unspecified larger amount of land but after being advised as to gift tax consequences he decided to "cut it down to [the] 80 acres that I did give them." When the notes became due the son and daughter did not pay them. The father did. The father has paid for all of the taxes and insurance on the house. The house was completed and at some point in time it became apparent the house was not on the 80 acre tract the father had conveyed to the couple.
The son and daughter-in-law were divorced, and the trial judge gave the daughter-in-law the son's interest in the 80 acre tract as lump sum alimony. After the divorce the daughter-in-law continued in possession of the house and the father filed an unlawful detainer proceeding. The daughter-in-law counterclaimed, alleging a "mutual mistake," as the 80 acre tract did not include the house, and sought to have the father's deed reformed to include land which would include the house. The trial court found that it had been the intention of the father to convey the property upon which the house was located and that it had been the intention of the grantees to build the house upon the property the father was giving to them and, consequently, that a "mutual mistake" of fact had occurred. As to the father's argument, that when the sole consideration for a deed is love and affection a deed cannot be reformed (Harrod v. Simmons, 143 So.2d 717 (Fla.2d *26 DCA 1962)), the trial court found that the son's assistance to the father with the cattle business was sufficient consideration to support reformation of the deed. The trial court also found that the father had made a $30,000 gift to the son and daughter-in-law when he paid the bank notes. The trial court denied the father all relief and ordered him to execute to the daughter-in-law "a quitclaim deed to a 200 foot strip of his property abutting [the daughter-in-law's] east property line and running south from the north line to a point below the house ..." and, "in order to do equity," the court also ordered the daughter-in-law to execute to the father "a quitclaim deed to a strip of her property north of her south line containing approximately the same square footage of land as [the father's] deed." The trial court also gave the father the option of conveying to the daughter-in-law a perpetual easement across his property from a paved road to the daughter-in-law's driveway or, at his expense, to relocate existing fencing and cause a driveway to be constructed for the daughter-in-law on her land. The trial court also directed the daughter-in-law's attorney to retain a registered land surveyor to measure off the land parcels, run the lines, put down boundary markers, and furnish maps of survey and land descriptions and further directed the attorney to prepare deeds, all costs and expenses to be taxed against the father. The father appeals. We reverse.
Harrod v. Simmons, 143 So.2d 717, cited by the father's attorney to the trial court, applied the general rule that regardless of the availability of convincing evidence of the grantor's true original intention, a court of equity will not reform the property description in a deed based on love and affection. The basis for the rule is that a court of equity reforms the deed's property description to correct the deed to conform it to the true intention of the parties to an underlying contract, in which the grantor has legally bound himself to convey land, and where the deed, because of a mistake in the property description, does not fully satisfy the grantor's contractual obligations. Reformation in such a case is but specific performance of a contract to convey the land because the deed given, to the extent of a mistake in the property description, does not constitute full performance of the underlying contract to convey the land.
It is well settled that

Where an agreement has been actually entered into, but the contract, deed, or other instrument, in its written form does not express what was really intended by the parties thereto, equity has jurisdiction to reform the written instrument so as to make it conform to the intention, agreement, and understanding of all the parties. (emphasis supplied)
Jacobs v. Parodi, 50 Fla. 541, 39 So. 833 (1905). See also Shell Creek Land Co. v. Watson, 101 Fla. 172, 133 So. 621 (1931). This principle presumes the existence of valid contract to convey land.
In the usual case of reformation of a contract, or the description in a deed,[1] the legal issues involve a determination of the true intent of contracting parties and the effect of any mistake resulting in a difference between the true intent of the parties and the written contract they adopted to evidence their intent or in a difference between the contract to convey *27 land and the deed given in satisfaction of the contracted obligation of the seller-grantor under the contract. On the other hand, a donor's intent in making a gratuitous promise to make a gift, or any mistake of the donor in attempting to effectuate his donative intent, is not a proper subject for legal inquiry and relief because a gratuitous promise to make a gift does not constitute a contract and is not legally enforceable. The promisor may change his mind at will and is likewise free to correct any mistake he might make in effectuating his intention to make a gift and is also free to not do so. When two parties enter into a contract there must be a mutual intent  a "meeting of the minds"  concerning which there can be a "mutual mistake" subject to certain legal corrections. However, the intent a donor must have to make a valid gift is entirely unilateral and subjective. If the gift is beneficial the donee's intent to receive it is not essential and, in any event, is not binding on, or enforceable against, the donor. In this case, if the father's unexecuted intent was legally binding on him he could be made to convey the larger tract that he originally intended to give before he reconsidered the gift tax consequences.
There is no evidence that the father executed the deed in question in quid pro quo consideration for the son's services in helping the father with the father's cattle. The son, in helping his father, may have also been acting out of "love and affection" or for other past considerations running from the father to the son. The deed recites as consideration only "love and affection" and the father's testimony confirms that it was his intent to make a gift. No witness in this case is qualified to contradict the father's statement of his own motive and intent in making his gift. Any such contradiction is legally irrelevant in any event. Likewise there is insufficient record evidence to support the trial court's finding that the father intended and made a gift to the son and daughter-in-law of the $30,000 he paid to discharge the promissory notes, the proceeds of which were used to construct the house in question.
We find that the trial court erred in attempting to reform the father's deed of gift because there was no legally binding agreement to which the deed could be made to conform. Langley v. Irons Land and Development Co., 94 Fla. 1010, 114 So. 769 (1927); Mills v. Mills, 339 So.2d 681 (Fla. 1st DCA 1976). Even in a proper case for reformation the court cannot make a new contract for the parties, as the trial court attempted to do in this case, but can only reform a definite prior existing contract which was merely defectively evidenced in writing. Southern Lead Corp. v. Glass, 103 Fla. 657, 138 So. 59 (1931).
The final judgment is reversed and the cause remanded with directions that the trial court enter a judgment in favor of the father and against the daughter-in-law giving the father possession of his property upon which the house is located and denying the daughter-in-law relief on her counterclaims.
REVERSED and REMANDED.
DAUKSCH and ORFINGER, JJ., concur.
NOTES
[1] As distinguished from covenants of warranty, et cetera, which are often in a deed but which are not essential to its character, a deed is not a contract. A deed does something (conveys land) as distinguished from promising to do something. Its delivery is performance by the buyer under an agreement to convey land unless, as here, it is merely a document to evidence, and effectuate, an intent to make a gift of land. Such a deed of gift is similar to restrictive covenants imposed by one on his own land or a declaration of condominium, all being legal documents under which others acquire and maintain legal rights after their execution but which are nevertheless created by unilateral acts not based on consideration from a second party. Defects in the execution of such documents are not subject to correction by the courts by reformation based on allegations of some mistake between the document and intent of the person unilaterally executing the document. See, e.g., Biancardi v. Providence Square Association, Inc., 481 So.2d 1272 (Fla. 5th DCA 1986).