536 So.2d 1151 (1988)
Robert A. AYERS and Vivian A. Ayers, His Wife, Appellants,
v.
Harry P. THOMPSON, Jr., Appellee.
No. 88-375.
District Court of Appeal of Florida, First District.
December 28, 1988.
*1152 Edward A. Dempsey, Jr., Jacksonville, for appellants.
John Paul Howard, Jacksonville, for appellee.
JOANOS, Judge.
Robert and Vivian Ayers appeal a final judgment entered in a dispute which arose in the context of a purchase and sale of real property. Mr. and Mrs. Ayers contend the trial court erred (1) in reforming a recorded deed by striking the language "Grantor reserves ten (10) feet along the southerly boundary for common access of both grantor and grantee," and (2) in awarding damages in the sum of $1,920.00 to appellee Harry P. Thompson, Jr. We affirm in part, and reverse in part.
The record in this case reflects that at the request of Mr. Thompson, a real estate broker prepared and delivered a purchase and sale agreement for purchase of property owned by Mr. and Mrs. Ayers. The agreement was signed by Robert Ayers, but was not signed by his wife. The property to be sold was a portion of, and adjacent to property on which there is situated a restaurant and lounge owned and operated by Mr. and Mrs. Ayers. Mr. Thompson and Mr. and Mrs. Ayers were represented in the transaction by licensed real estate brokers.
Paragraph twenty-two of the purchase and sale agreement contained the following handwritten provision:
Any buildings erected by buyers will be set-back at least 40 feet from Lane Ave.
The set-back provision appears to have been initialed by both parties. The purchase and sale agreement contains no reference to an easement.
In reviewing the survey prepared of the property in contemplation of the sale, Mr. Ayers discovered the property line of the portion to be sold was closer to his building than he had anticipated. Mr. Ayers then contacted his realtor and advised that he intended to reduce the amount of land to be sold by ten feet. The realtor suggested an easement rather than a reduction.
*1153 The circumstances concerning the insertion in the deed of the language reserving an easement are in dispute. Present at the closing were Mr. and Mrs. Ayers together with their realtor, Mr. Thompson and his realtor, the title company closing agent, and the manager of the title company. According to Mr. Ayers, as the closing documents were passed around, he realized the easement had not been noted in the deed. After some discussion, the closing agent was directed to insert the ten-foot reservation into the deed. Mr. Ayers testified that when the closing agent returned with the corrected deed, he and his wife executed it before both realtors, who then signed as witnesses. He further testified that he would not have signed the deed without the provision for an easement.
According to Mr. Thompson, the closing was conducted without incident until the end, when Mr. Ayers asked him [Thompson] if he would have any objection to constructing his building ten feet from the line. Mr. Thompson maintained he was unaware that anything had been added to the deed until he received a letter from Mr. Ayers's attorney. The testimony of Mr. Thompson's realtor essentially corroborated that of Mr. Thompson. However, the realtor acknowledged that some part of the discussion concerning the ten-foot easement focused on Mr. Ayers's interest in assuring access to the rear of his building for emergency vehicles and maintenance vehicles.
The record further reflects that Mr. Thompson had a building constructed ten feet from the line dividing his property from that of Mr. and Mrs. Ayers. Thereafter, he erected a four-foot chain link fence which extended one hundred feet toward the back of the property. Approximately three months later, the fence was completed with the addition of a six-foot fence which extended all the way to the back of the property. In addition to the fence, Mr. Thompson placed an air conditioner and a septic tank within the ten-foot area of the south property line running between his building and the restaurant/lounge owned by Mr. Ayers.
When Mr. Ayers observed the fence being installed, he obtained a copy of the recorded deed. After assuring himself that the written deed contained the reservation, he directed his attorney to write to Mr. Thompson about removing the fence. When he obtained no response to the first letter, or to a second letter, Mr. Ayers contacted the State Attorney's office. Mr. Ayers's next step was to have the fence removed, which in turn occasioned the filing of Mr. Thompson's complaint seeking reformation of the deed, an injunction, and damages.
Evidence presented at the bench trial indicated the cost of the four-foot fence was $275.00, and the cost of the six-foot fence was $345.00. On proffer, Mr. Thompson testified that after the fence had been removed someone had driven into his air conditioning unit, and that the repair cost had been $1,300.00. Mr. Ayers's attorney objected to introduction of photographs or testimony regarding the damaged air conditioning unit, and further objected to a motion to amend the complaint to include that item of damage. The trial court denied the motion to amend, and granted the motion to exclude evidence of the damaged air conditioning unit.
In the final judgment, the trial court found that while there was discussion at the closing concerning either a ten-foot set back of the building, or the establishment of a common easement for ingress and egress along the buyer's south boundary line, the buyer's conduct made it clear that he did not intend to grant a ten-foot easement. The trial court further found that there was no agreement between the parties with regard to the grant of a ten-foot easement, and that the purchase and sale agreement entered into by the parties specifically provided that no alterations or changes could be made to the contract except in writing, and signed or initialed by the parties. Therefore, the trial court reformed the deed by striking the language, "Grantor reserves ten (10) feet along the Southerly boundary for common access of both Grantor and Grantee." In addition, the trial court determined that Mr. Thompson was entitled to recover damages in the *1154 amount of $1,920.00, together with costs of $77.50.
The equitable remedy of reformation is available where, due to mutual mistake, the written instrument does not accurately express the true intention or agreement of the parties. Providence Square Association v. Biancardi, 507 So.2d 1366, 1369 (Fla. 1987); Hardaway Timber Co. v. Hansford, 245 So.2d 911 (Fla. 1st DCA 1971); Brown v. Brown, 501 So.2d 24, 26 (Fla. 5th DCA 1986), review denied, 511 So.2d 297 (Fla. 1987); Belitz v. Riebe, 495 So.2d 775 (Fla. 5th DCA 1986); 9 Fla.Jur.2d Cancellation, Reformation and Rescission of Instruments, § 71 (1979). The principle is applicable to instruments of conveyance of real property as well as to contracts. Providence Square Assoc. v. Biancardi, 507 So.2d at 1369; Brown v. Brown, 501 So.2d at 26. In addition, reformation is proper for unilateral mistake on one side of the transaction, and inequitable conduct on the other. Providence Square, 507 So.2d at 1372, fn. 3. See also Robinson v. Wright, 425 So.2d 589 (Fla. 3d DCA 1982); Hardaway Timber Co. v. Hansford, 245 So.2d at 913. The underlying rationale is that 
in reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.
Providence Square, 507 So.2d at 1370.
In a suit for reformation, the evidence of mistake, whether mutual or unilateral, must be clear and convincing. See Robinson v. Wright, 425 So.2d 589; Watkins v. DeAdamich, 187 So.2d 369, 371 (Fla. 2d DCA 1966); Sobel v. Lobel, 168 So.2d 195, 197 (Fla. 3d DCA 1964). Parol evidence is admissible in a reformation action in equity for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument. By the same token, "the doctrine of merger in deed, under which preliminary understandings, negotiations, and agreements regarding a conveyance are held to merge in the deed leaving it as the sole expositor of the parties' intent, is inapplicable in an action seeking the equitable remedy of reformation." Providence Square, 507 So.2d at 1371; Rigg v. Vernell, 428 So.2d 668 (Fla. 3d DCA 1982); Johnson v. Johnson, 403 So.2d 1388 (Fla. 2d DCA 1981).
The well settled rule in Florida is that neither spouse vested to an estate by the entireties, can alienate or encumber any part of the estate without the consent of the other spouse. Cooper v. Maynard, 156 Fla. 534, 23 So.2d 734 (1945); Schmidt v. Matilsky, 490 So.2d 237 (Fla. 1st DCA 1986); Parrish v. Swearington, 379 So.2d 185 (Fla. 1st DCA 1980); Murray v. Sullivan, 376 So.2d 886 (Fla. 1st DCA 1979). However, an exception occurs if in the transaction one spouse, with full knowledge of the other spouse, constitutes the other spouse as his or her agent and acquiesces to the act of alienation by the agent spouse. Schmidt v. Matilsky, 490 So.2d at 238; Murray v. Sullivan, 376 So.2d at 889.
It is also well settled that in an equitable action for reformation of a written instrument, the trial court's findings of fact are entitled to a presumption of correctness, and where the evidence is subject to varying interpretations  the trial court's resolution of conflict will not be disturbed on appeal unless shown to be clearly erroneous. Providence Square, 507 So.2d at 1372; Storer v. Storer, 353 So.2d 152, 156 (Fla. 3d DCA 1977), cert. denied, 360 So.2d 1250 (Fla. 1978).
In the instant case, the trial court was required to resolve conflicting versions concerning not only the point at which the ten-foot reservation was inserted into the deed, but also the purpose of the reservation. We note first that there is considerable authority that a written contract may be modified by subsequent oral agreement, see, e.g., Linear Corp. v. Standard Hardware Co., 423 So.2d 966, 968 (Fla. 1st DCA 1982); Rigg v. Vernell, supra; Johnson v. Johnson, supra; therefore, the authorities cited in the final judgment for the proposition that written contracts under seal cannot *1155 be modified by subsequent oral agreement of the parties are not dispositive of the reformation issue in this case. Nevertheless, we conclude that the trial court's finding that the subsequent conduct of Mr. Thompson demonstrated there was no agreement between the parties regarding the grant of a ten-foot easement, is a reasonable interpretation of the evidence. Furthermore, implicit in this determination was the trial court's finding that Mr. Ayers was guilty of inequitable conduct, thereby justifying the equitable remedy of reformation. As a final note, the assertion that the purchase and sale agreement was not binding because not signed by Mrs. Ayers, is without merit. The fact that Mrs. Ayers joined in the conveyance of the property at closing demonstrates that she consented to Mr. Ayers's act of alienation.
We agree with the trial court that the recorded deed in this case was not an accurate reflection of the parties' agreement as evidenced by the purchase and sale agreement. Moreover, there is nothing in this record which would indicate that the trial court's resolution of the conflicting evidence was clearly erroneous. Therefore, we affirm the final judgment insofar as it pertains to the reformation issue.
However, we find we must reverse the damages award of $1,920.00, because there is an absence of evidence to support this amount of damages. This $1,920.00 figure appears to encompass the purported cost of repair to Mr. Thompson's air conditioner, as well as the fence costs. Since the final judgment contains no findings with regard to damages, we are unable to determine whether the amount awarded contemplated the fence costs together with $1,300.00 as punitive damages, or whether the award contemplated the fence costs together with air conditioner repair costs. If the award was predicated on the latter rationale, it was inappropriate in light of the evidentiary rulings at the hearing. If predicated on the former rationale, the absence of findings in the record precludes review of the matter. Therefore, we reverse the damages portion of the final judgment, and remand with directions to clarify the amount of the award, or to reduce the award to reflect the $620.00 amount of damages reflected in the record.
Accordingly, we affirm that portion of the final judgment reforming the deed, and we reverse and remand the damages award for further proceedings consistent with this opinion.
WIGGINTON and NIMMONS, JJ., concur.