731 So.2d 169 (1999)
Jennie C. KOLSKI a/k/a Jean Kolski a/k/a Jeannie Kolski, By and Through Stephen J. KOLSKI, Appellant,
v.
Patricia M. KOLSKI, Individually and as Trustee of Alexander Patrick Kolski 1990 Special Trust; and as Trustee of Joseph Alexander Kolski 1990 Special Trust, Appellee.
No. 98-2331.
District Court of Appeal of Florida, Third District.
May 12, 1999.
*170 Catlin, Saxon, Tuttle & Evans, P.A.; Ross & Tilghman and Lauri Waldman Ross, for appellant.
Koppen, Watkins, Partners & Associates, P.A. and R. Daniel Koppen, for appellee.
Before COPE, GREEN, and SORONDO, JJ.

REVISED OPINION
GREEN, J.
Appellant, Jennie C. Kolski, the mother-in-law of appellee, Patricia M. Kolski, filed a four count amended complaint for unjust enrichment and restitution, repayment of a loan, imposition of a constructive trust and reformation of a writing. This is an appeal from a final order dismissing the complaint with prejudice as being barred by the statute of frauds and for failing to state a cause of action for reformation. We reverse.
Jennie C. Kolski sued her daughter-in-law, Patricia, individually and in her capacity as trustee for two trusts established for the benefit of her two sons, Patrick and Alexander II. As alleged in the second amended complaint, Jennie orally loaned $40,000 to her late son, Alexander and his wife, Patricia, for them to purchase and capitalize a mortuary business. Jennie's son and daughter-in-law operated this business until her son's death. The terms of this loan were that it was payable on demand with an interest rate of ten percent (10%) per annum payable on a semiannual basis. The interest rate was later reduced to six percent (6%) per annum. After Alexander's death, Patricia continued to operate the business and induced her mother-in-law, Jennie to forbear collection of the loan by ratifying and assuming the repayment obligation in full and continuing to make the scheduled semiannual interest payments. Thereafter, Patricia continued to make the semi-annual interest payments on checks written on her personal checking account as well as on checks written on the trust accounts for her minor sons. As evidence of this oral loan agreement, Jennie attached a copy of her Last Will and Testament dated May 17, 1988, which states in Article VIII that:
I hereby advise my personal representative and children that there is owing to me, and is to be included in my estate, the sum of forty thousand dollars ($40,000.00) from my late son ALEXANDER KOLSKI, to whom I loaned this amount, at six percent (6%) annual interest, for the purpose of his purchasing the mortuary business in which he was engaged at the time of his death. I have discussed this loan with his widow, PATRICIA KOLSKI, who has acknowledged her obligation to repay the loan in full. She has requested, and I have agreed that, for the present, she will be required to make interest payments only, on a semiannual *171 basis, so that the business will not be adversely affected during the period of transition following my son's recent death.
Jennie further attached copies of canceled checks made payable to her and signed by Patricia which indicated that they were for loan interest and copies of Patricia's tax returns which reflect that the interest deductions taken by her in various years corresponded with her interest payments to Jennie.
The amended complaint also alleges that at some point, Patricia sold the mortuary business and converted the cash to her benefit and/or the benefit of the Alexander Patrick Kolski 1990 Special Trust and/or the Joseph Alexander Kolski 1990 Special Trust. In October 1995, Jennie made her first demand for the repayment of the principal of the loan. On or about September 9, 1997, Patricia denied, for the first time, her obligation to repay the $40,000 dollars to Jennie. This lawsuit was then filed and Patricia moved to dismiss the same on the grounds that it was barred both by the statute of frauds and the statute of limitations and that the equitable claim for reformation failed to state a cause of action. The motion was granted with prejudice on the grounds that it was barred by the statute of frauds and that it failed to state a cause of action for reformation.[1] This appeal followed.
On review of a motion to dismiss for failure to state a cause of action, we are "`required to treat the factual allegations of the complaint as true and to consider those allegations in the light most favorable to plaintiffs.'". Dee v. Sea Ray Boats, Inc., 702 So.2d 1349, 1349 (Fla. 3d DCA 1997) (quoting Hollywood Lakes Section Civic Ass'n, Inc. v. City of Hollywood, 676 So.2d 500, 501 (Fla. 4th DCA 1996)). Viewing the allegations of the amended complaint in this light, we conclude that they were sufficient to take this action outside of the statute of frauds and sufficient to state a cause of action for reformation.
The statute of frauds, section 725.01, Florida Statutes governs oral promises to repay the debts of another. It provides that:
No action shall be brought whereby to charge ... the defendant upon any special promise to answer for the debt, default or miscarriage of another person... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith[.]
§ 725.01, Fla. Stat. (1997) (emphasis added). To satisfy the statute, a note or memorandum may take almost any possible form. See Bader Bros. Transfer & Storage, Inc. v. Campbell, 299 So.2d 114, 115 (Fla. 3d DCA 1974) (holding settlement sheets were sufficient to constitute memorandum under statute of frauds); Rank v. Sullivan, 132 So.2d 32, 36 (Fla. 2d DCA 1961) (holding statement in will of person being charged constituted a sufficient memorandum to satisfy statute of frauds); Heffernan v. Keith, 127 So.2d 903, 904 (Fla. 3d DCA 1961) (finding that telegram constitutes note or memorandum confirming prior agreement). All that the statute requires is written evidence from which the whole contract may be made out. Further, "[f]or purposes of the statute of frauds, several writings, only one of which is signed by the debtor, may be aggregated to satisfy the statute provided that the signed writing expressly or implicitly refers to the unsigned document.". *172 Cook v. Theme Park Ventures, Inc., 633 So.2d 468, 471 (Fla. 5th DCA 1994); see also Middelthon v. Crowder, 563 So.2d 94, 95 (Fla. 3d DCA 1990); Rohlfing v. Tomorrow Realty & Auction Co., Inc., 528 So.2d 463, 465 (Fla. 5th DCA 1988) (holding real estate terms of sale together with buyer's guide and check constituted sufficient writings to satisfy statute); First Guaranty Corp. v. Palmer Bank and Trust Co. of Fort Myers, N.A., 405 So.2d 186, 189 (Fla. 2d DCA 1981) ("[S]ince no reference is made to the mortgage itself or to any obligation owing to Palmer Bank or to any other financial institution, the mortgage document cannot be interrelated with the joint venture agreement to satisfy the statute of frauds."). "An implied reference may be established by either the fact that the documents relate to the same subject matter or by physical annexation." Id. at 188. Moreover, in certain instances, parol evidence may be admissible to clarify the writing. Id.
We find that the specific reference to the terms of the alleged loan made by Jennie in her will together with the canceled checks signed by Patricia in the precise amount of the semi-annual interest payments on the $40,000 dollar loan and with notations that they were for "loan interest", were sufficient writings to take the oral agreement out of the statute of frauds. Here, Patricia Kolski, the party to be charged, at least made an implicit reference on her checks to the terms of the loan as spelled out in Jennie Kolski's will. Based upon such implicit references, parol evidence may be admissible to clarify the canceled checks and connect them to the particular provision in Jennie's will. See Jackson v. Parker, 153 Fla. 622, 15 So.2d 451, 460 (1943) ("Parol evidence is admissible to connect several written instruments and show that they were all parts of one transaction."); Northwestern Bank v. Cortner, 275 So.2d 317, 319 (Fla. 2d DCA 1973) (same); see also, First Guar. Corp., 405 So.2d at 188. Thus, specifically as to count II for the repayment of a loan, we conclude that it was error to dismiss this cause based upon the statute of frauds.
As to counts I and III for unjust enrichment/restitution and the imposition of a constructive trust respectively, we agree that the statute of frauds is simply inapplicable to such claims. See Harrison v. Pritchett, 682 So.2d 650, 652 (Fla. 1st DCA 1996) (holding that statute of frauds inapplicable to quantum merit action which is common law variety of restitution); Zanakis v. Zanakis, 629 So.2d 181, 183 (Fla. 4th DCA 1993) (holding that constructive and resulting trusts can be based on parol evidence which is consistent with statute of frauds which specifically excepts these equitable trusts); Varnes v. Dawkins, 624 So.2d 349, 351 (Fla. 1st DCA 1993) (finding that statute of frauds inapplicable to trusts arising by operation of law). Thus, the trial court erred in dismissing these counts as well.[2]
On the remaining count IV, Jennie seeks a reformation of one of Patricia's canceled checks to reflect the parties' alleged agreement that the $40,000 dollar loan was payable upon demand. In this count, Jennie alleges the existence of a "writing which acknowledges a majority of the material terms of an oral demand loan agreement" between the parties and that the subject check is missing the demand payment term as a result of a unilateral mistake on her part and due to Patricia's inequitable conduct.[3] We conclude that *173 these allegations are sufficient to state a cause of action for reformation.[4] Reformation is an equitable remedy, see Smith v. Royal Automotive Group, Inc., 675 So.2d 144, 151 (Fla. 5th DCA 1996), which "acts to correct an error not in the parties' agreement but in the writing which constitutes the embodiment of that agreement." Id. at 150. Thus, where the alleged mistake in the writing is the "product of the parties' mutual mistake, or unilateral mistake on the part of one party and inequitable conduct by the other, the writing should be reformed to accurately reflect the parties' agreement." Id.[5] (emphasis added) (citations omitted). The underlying rationale is that in reforming the instrument the agreement of the parties is in no way altered but merely corrects the defect in the written document to reflect the true terms of the parties' agreement. See Providence Square Ass'n Inc. v. Biancardi, 507 So.2d 1366, 1369-70 (Fla.1987). We find that the well-pled allegations contained in this count were sufficient to withstand the motion to dismiss and we reverse the trial court's dismissal of this count as well.
Reversed and remanded.
SORONDO, J., concurs.
COPE, J. concurring in part and dissenting in part.
Upon consideration of the appellant's motion for rehearing, I withdraw my separate opinion filed March 3, 1999, and substitute the following opinion:
I concur on all except the reformation claim. Reformation is not a proper remedy here.
I agree with the majority that a check may be the subject of reformation action. See majority opinion at 172 n. 3. If a check stated the wrong amount or payee, it could be reformed to correct the error.[*]
The claim in this case is that an already-paid check can be "reformed" so as to change it into a completely different instrument: a promissory note. This is the legal equivalent of turning a frog into a prince. It is not a proper function for a reformation action.
Let us examine the facts. In September 1995, defendant Patricia Kolski wrote a check for $1200 to plaintiff Jennie Kolski. This was an interest payment: the notation on the check indicated "½ yr due 10/95 at 6%."
Plaintiff cashed the check. The $1200 has been paid, and the check is defunct.
In her reformation claim, plaintiff asks the trial court to add to the margin of the check the following language: "$40,000 demand obligation." By this technique plaintiff proposes to change an already-paid interest check for $1200 into a promissory *174 note for a principal amount of $40,000. This cannot be done.
The purpose of a reformation action is to correct an error in the original instrument. See Smith v. Royal Automotive Group, Inc., 675 So.2d 144, 150 (Fla. 5th DCA 1996); Alexander v. Kirkham, 365 So.2d 1038, 1040 (Fla. 3d DCA 1978); see also Providence Square Association, Inc. v. Biancardi, 507 So.2d 1366, 1370 (Fla.1987).
Reformation cannot be used to make a new agreement between the parties. See Southern Lead Corp. v. Glass, 103 Fla. 657, 138 So. 59, 61 (1931). It follows that reformation cannot be employed to transform a dead check for a $1200 interest payment into a live promissory note for $40,000.
NOTES
[1] Although the trial court did not dismiss the amended complaint on the additional grounds that this action was barred by the statute of limitations, the appellees have commendably conceded on appeal that this action was not subject to dismissal on these grounds. A cause of action on a contract does not accrue for purposes of the statute until the breach or in this case, upon Patricia's first refusal to repay the loan in 1997. See State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818, 821 (Fla.1996) (citing Fradley v. County of Dade, 187 So.2d 48, 49 (Fla. 3d DCA 1966)).
[2] Our decision here is based solely on the application of the statute of frauds and in no way addresses the merits of this action. See Harrison, 682 So.2d at 652-53 n2.
[3] The revised dissent now appropriately concedes that a personal check is a negotiable instrument, see section 673.1041(1), (3), (6), Florida Statutes (1995); Kehle v. Modansky, 696 So.2d 493, 494 (Fla. 4th DCA 1997) (personal check is a negotiable instrument); Medina v. Lamonica, 492 So.2d 809, 810 (Fla. 3d DCA 1986), which may be the subject matter of a reformation action. See 66 Am.Jur.2d Reformation of Instruments § 29 (1973); see also Kegel v. McCormack, 225 Wis. 19, 272 N.W. 650, 653 (1937) (stating that "[t]here seems to be no doubt that a negotiable instrument may be reformed as between the original parties as may any other simple contract and that reformation will be decreed upon the same grounds as reformation is decreed in other cases."). The dissent, however, now opines that such an action is limited to instances where the check states the wrong amount or payee and in any event, is extinguished once the check has been cashed or paid. See dissent opinion at 10. Our research has failed to disclose any authority in support of such limitations and we decline to impose any in the first instance. Although it is certainly true that reformation cannot be used to create a new agreement between the parties, reformation is available to reform any written instrument whether executed or executory. See 9 Fla. Jur.2d Cancellation, Rescission, and Reformation of Instruments, § 54 (1997).
[4] In so holding, of course, we express no opinion as to the merits of this count at this juncture.
[5] We note in passing that the statute of frauds does not bar an action for reformation. "As reformation does not `charge' the other party with enforcement of the agreement, the statute of frauds has no effect on an action to reform a written document." Smith, 675 So.2d at 153. (citations omitted).
[*] Since checks are usually presented promptly for payment, there would rarely be a case where reformation would be a practical remedy.