MARSTILLER, J.
The Calypso Developers I, LLC (“Calypso”), appeals the final judgment entered in an action for equitable reformation brought by Appellee, Pelican Properties of South Walton, LLC (“Pelican”). The judgment grants Pelican’s claims, based on mutual mistake, for reformation of a purchase and sale agreement and the concomitant special warranty deed to include a condominium unit not previously conveyed, but denies Calypso’s counterclaim for reformation of the agreement to also include an adjusted price. Calypso challenges only that portion of the final judgment denying the counterclaim. We affirm.
*1216 In 2006, Calypso and Pelican entered into two purchase and sale agreements under which Pelican was to buy from Calypso two commercial condominium units— 4-101 and 4-102 — located in a condominium development called Calypso Tower I (“Tower I”). The parties intended that Pelican would purchase all the commercial space in Tower I, and they believed both units comprised the commercial space. The purchase price for Unit 4-101 was $138,400, and the purchase price for Unit 4-102 was $796,800. The purchase prices were calculated at $200 per square foot, but neither contract included the unit’s square footage or expressly stated a price per square foot.
After the contracts were executed, but before closing, the parties determined that Unit 4-101 was common area and could not be sold. Thus, they canceled the purchase and sale agreement for Unit 4-101, and closed on Unit 4-102 at the agreed-upon price of $796,800. The purchase and sale agreement for Unit 4-102 (hereinafter “Agreement”) stated that Pelican was buying
Unit No. 4-102 (the “Unit”), together with its undivided share of the common elements and other appurtenant rights, of Calypso Towers I, a Condominium (the “Condominium”), all on the terms and subject to the provisions hereof.
Calypso executed a special warranty deed conveying title to Unit 4-102 to Pelican. The legal description in the deed read:
Condominium Unit No. 4-102, Calypso Towers I, a Condominium, according to the Declaration of Condominium thereof recorded in Official Records Book 2747, Page 1687, and re-recorded in Official Records Book 2750, Page 1378, all of the public records of Bay County, Florida, and all exhibits and amendments thereto; together with an undivided interest in the common elements appurtenant thereto, as set forth in the Declaration of Condominium.
Notwithstanding that Pelican did not buy or take title to Unit 4-101, Pelican, or its tenants, occupied both units after the December 2006 closing on Unit 4-102. In 2009, the parties discovered Unit 4-101 was not, in fact, common space. They agreed that the Agreement and the deed should be reformed to reflect their original intent. In addition, Pelican agreed to reimburse Calypso for the prior years’ real estate taxes and other assessments associated with Unit 4-101. As to reforming the Agreement to include the price of the additional unit, however, the parties disagreed.
Hence, Pelican filed a four-count complaint alleging mutual mistake and seeking to: (1) reform the special warranty deed to include the legal description for Unit 4-101; (2) reform the Agreement to include Unit 4-101; (3) quiet title to Unit 4-101 in Pelican; and (4) alternatively rescind the Agreement. Calypso asserted a counterclaim. In Count I, Calypso sought to reform the Agreement not only to include Unit 4-101, but also to include the “actual” square footage for both units, and to set a total purchase price at $200 per square foot, less the $796,800 Pelican previously paid for Unit 4-102. Count II alleged, “Should Pelican become the owner of Unit 4-101, then it would be unjustly enriched by receiving more square footage than it originally paid for when it paid $796,800.00 for Unit 4-102.”
Before trial, the parties stipulated that “Pelican has made a prima facie case for its claims for reformation of the contract and deed to include Unit 4-101.... ” Thus, in the final judgment, the trial court reformed the Agreement and deed “to include Unit 4-101- within the legal description, providing [Pelican] with legal title to both units ... as originally intended by the parties.”
*1217 The only disputed issue tried was whether the Agreement reformation also should include an adjusted price to cover the actual combined square footage* for Units 4-101 and 4-102, less the $796,800 Pelican paid in 2006. On that issue, the trial court concluded there was no mutual mistake as to pricing or square footage in the commercial space. Noting there was “disagreement and conflicting evidence as to the agreed-upon purchase price and the manner of its calculation,” the court found that although Pelican understood the purchase price was based on $200 per square foot, it had “agreed to purchase the entire commercial space for a set price of $796,800.” The court further found neither a specific per-square-foot price nor actual square footage were essential terms of the parties’ agreement. As such, there was no basis for reforming the Agreement to adjust the purchase price.

Analysis

The equitable remedy of reformation is available where, because of a mutual mistake, a written instrument does not accurately express the parties’ true intent or agreement. See Providence Square Ass’n, Inc. v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987); Ayers v. Thompson, 536 So.2d 1151, 1154 (Fla. 1st DCA 1988). Applicable both to instruments conveying real property and to contracts, “reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.” Providence Square, 507 So.2d at 1370. The party seeking reformation must present clear and convincing evidence of mutual mistake. See Ayers, 536 So.2d at 1154; Canal Ins. Co. v. Hartford Ins. Co., 415 So.2d 1295, 1297 (Fla. 1st DCA 1982).
We express some doubt as to whether, in the absence of the parties’ stipulation below, the facts would support reforming the Agreement and deed to include Unit 4-101. Although the parties intended that Pelican would purchase all the “commercial space” or “retail space” in Tower I, they nevertheless priced Units 4-101 and 4-102 individually and executed two separate purchase and sale agreements — one for each condominium unit. Upon determining — albeit mistakenly — that Unit 4-101 could not be sold, the parties canceled the contract for that unit. The surviving contract for Unit 4-102 does not appear subject to reformation to include Unit 4-101 because it “accurately reflected] the true terms of the agreement actually reached.” It is of no consequence that the parties were mutually mistaken about whether Unit 4-101 was a sellable unit or common space. See Providence Square, 507 So.2d at 1372 (“A mistake is mutual when the parties agree to one thing and then, due to either a scrivener’s error or inadvertence, express something different in the written instrument.”).
As to the deed, the parties characterized the error in the instrument as an incorrect legal description of the “commercial space” they intended Pelican to own. When executed, the deed conveyed title to Unit 4-102. A condominium unit is a single parcel of real property that is taxed ánd assessed separately from other units. See §§ 718.103(12), 718.120(1), Fla. Stat. (2006). Moreover, every condominium parcel has its own legal description. See § 718.109, Fla. Stat. (2006) (“[A] description of a condominium parcel by the num *1218 ber or other designation by which the unit is identified in the declaration, together with the recording identifying the declaration, shall be a sufficient legal description for all purposes.”). The deed here contained what appears to be the correct legal description for Unit 4-102. It comported with the purchase and sale agreement for Unit 4-102 — the only extant contract at the time — and excluded Unit 4-101 — a separate condominium parcel that was not purchased. Therefore, it appears the deed had no defect justifying reformation of the instrument. See Shell Creek Land Co. v. Watson, 101 Fla. 172, 133 So. 621, 622 (1931) (stating that equity will reform a conveyance “clearly shown” to mis-de-scribe the land intended to be conveyed).
Nevertheless, Calypso assented to reforming the Agreement and deed to include Unit 4-101, and our review is only of the trial court’s decision not to also adjust the purchase price. There is sufficient evidence in the record, particularly the testimony of Pelican’s owner, Julie Lawson, to support the court’s finding that the parties agreed to the sale and purchase of what they believed to be the available commercial space in Tower I for a flat price of $796,800, as opposed to a price per square foot. The evidence further supports the court’s determination that actual square footage was not an essential term of the parties’ agreement. “In determining whether or not a contract for the sale of real estate is one in gross or by the acre, the court must weigh all the circumstances which may serve as an indication as to whether or not it was the intention of the parties to make quantity the essence of the contract.” Worsham v. Pierce, 251 So.2d 896, 898 (Fla. 1st DCA 1971) (defining a “contract of sale by the tract or in gross” as “one in which the existence of the exact quantity specified is not material nor of the essence, each party taking the risk of the actual quantity to vary to some extent from what he expects it to be”). Calypso invites us to take a different view of the evidence, arguing that Pelican’s knowledge of the $200-per-square-foot multiplier is clear and convincing evidence that the parties intended a sale by the square foot. But it was within the province of the trial court, as the trier of fact, to interpret the evidence presented. “Though the evidence may be subject to varying interpretations, the [trial court’s] judgment resolving the evidentiary conflicts will not be disturbed on appeal unless it is shown to be clearly erroneous.” Providence Square, 507 So.2d at 1372. Because the evidence reasonably supports the trial court’s findings and conclusion, we affirm the final judgment.
AFFIRMED.
PADOVANO and SWANSON, JJ., concur.

 The figures from the Declaration of Condominium used to set the original purchase prices were 692 square feet for Unit 4-101 and 3,984 square feet for Unit 4-102, for a total of 4,676 square feet. Actual square footage, per a 2011 survey, is 1,239 for Unit 4-101 and 3,171 for Unit 4-102, for a total of 4,410 square feet.